1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    NORA EDIT RIVAS,                          Case No.  25-cv-03392-WHO

8                    Plaintiff,

9            v.                                **ORDER GRANTING MOTION TO COMPEL**

10   CVS PHARMACY, INC., et al.,               Re: Dkt. No. 10

11                   Defendants.

12          Nora Edit Rivas brought this action against CVS Pharmacy, Inc. and Long Drug Stores

13   California, LLC (collectively "CVS"), in state court alleging whistleblower retaliation, wrongful

14   termination, and wage and hour claims.  CVS removed the case to this court and now seeks to

15   compel arbitration pursuant to an arbitration agreement to which Rivas allegedly agreed during the

16   onboarding process in late 2023.  I conclude that the arbitration agreement is an enforceable

17   contract, that Rivas failed to opt out of arbitration when given the choice, and that the agreement is

18   not unconscionable.  The motion to compel is GRANTED.

19                                    **BACKGROUND**

20          Rivas was first employed by CVS from 2013 to 2021.  Declaration of Nora Rivas ("Rivas

21   Decl.") [Dkt. 11-1] ¶ 3.  In November 2023, she was re-hired as a pharmacy technician.  *Id.* ¶ 2.

22   As part of standard CVS onboarding process, new hires and re-hires are given access to the

23   WorkDay portal ("Portal") to review and complete pre-hire forms and review other onboarding

24   materials.  Declaration of Christopher Marcel ("Marcel Decl.") [Dkt. 10-12] ¶ 2.  The Portal's

25   landing page contains a "Review Documents" tab that identifies documents employees need to

26   review and for some, an "acknowledgement statement and checkbox that states 'I Agree.'"  *Id.* ¶¶

27   3-5.  The "CVS Health Arbitration Agreement" (the "Agreement") is included in the "Review

28   Documents" tab.  *Id.* ¶ 6.

United States District Court
Northern District of California

In order to review the Agreement, an employee must open the document and then affirmatively check the box containing the signature statement: "By checking this box, I agree that I have reviewed this document and my electronic signature will be applied as my acknowledgment of receipt for this form." *Id.* ¶ 7. CVS's records show that Rivas reviewed and acknowledged the Agreement on December 10, 2023 at 10:00 a.m. *Id.* ¶ 10.

Rivas does not recall checking the box. Declaration of Nora Rivas ("Rivas Decl.") [Dkt. 11-1] ¶ 7. She recalls that her onboarding process was "short and rushed" since she was previously employed by CVS. *Id.* ¶ 3. She claims not to have had the opportunity to read and review the onboarding documents, and that at "the request of the individual who onboarded me, I opened the documents and quickly reviewed them in order to complete the onboarding process." *Id.* ¶ 7. Rivas declares that no one at CVS discussed the Agreement with her, including the significance of agreeing to Arbitration. Rivas Decl. ¶¶ 10-11.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks and citation omitted). "Under the [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract [including] the threshold arbitrability questions[.]" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).

## DISCUSSION

Rivas opposes the motion to compel arbitration, arguing that she did not "consent" or otherwise agree to the Agreement and even if she did, it should be unenforceable because the

United States District Court
Northern District of California

Agreement is both procedurally and substantively unconscionable under California law.  *See generally* Opposition [Dkt. No. 11].

CVS argues, first, that under both the plain language of the Agreement and under the AAA Rules governing the Agreement, the dispute over whether Rivas agreed to the Agreement or whether it is unenforceable as unconscionable are issues reserved to the arbitrator and not me. Motion [Dkt. No. 10] at 16-18; Reply [Dkt. No. 13] at 3-4.  I need not reach this issue because assuming I have jurisdiction to review the consent and unconscionability arguments, I GRANT the motion to compel for the reasons discussed below.

## I.    PLAINTIFF VOLUNTARILY CONSENTED TO ARBITRATION

Rivas argues that she is not bound to the Agreement because she did not understand or voluntarily consent to it.  Oppo. at 6, 9; Rivas Decl. ¶ 8.  She contends that she was not aware of what arbitration was at the time and that she would not have agreed to binding arbitration had she known she would be relinquishing her right to a jury trial.  Oppo. at 3; Rivas Decl. ¶¶ 8, 11-12. However, Rivas manifested assent to the Agreement in two different ways.  First, she affirmatively clicked the Agreement's acknowledgment box.  Agreement at 1, 6; Marcel Decl. ¶ 10.  "A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement."  *Desert Outdoor Advert. v. Superior Court*, 196 Cal.App.4th 866, 872 (2011).[1]  Although Rivas does not recall clicking any "acknowledge" or "I agree" boxes during the onboarding process, CVS's WorkDay Portal shows that on December 10, 2023, at 10:30 a.m. using credentials available only to her, Rivas affirmatively agreed that she reviewed the Agreement and that her electronic signature served as her acknowledgment.  Marcel Decl. ¶¶ 3, 10, 11.

In addition, and fatal to Rivas's consent argument, CVS provided her with 30 days to opt out of the Agreement.  Agreement ¶ 2.  CVS shows that after an employee is onboarded, the

---

[1] Rivas relies on *Knutson v. Sirius XM Radio Inc.,* 771 F.3d 559, 569 (9th Cir. 2014) to argue that she did not voluntarily consent to arbitration.  Oppo. at 9.  But *Knutson* is inapposite.  There, plaintiff was unaware he was entering into a contract and did not provide *any* indication of his assent.  *Knutson*, 771 F.3d at 569.  Here, by contrast, Rivas knew she was entering into employment agreements and, despite her failure to recall doing so, affirmatively checked the box to indicate her assent specifically to the Agreement.  Rivas Decl. ¶¶ 2-3; Marcel Decl. ¶ 11.

employee may review any of the documents in the WorkDay portal using their unique credentials.

Marcel Decl. ¶¶ 4, 12.  Therefore, Rivas could have accessed the documents she claims she was

"rushed" to agree to.  Had she done so, she would have seen that the Agreement contained the

following instructions to opt out of arbitration:

> Opting-Out. Arbitration is not a mandatory condition of employment at CVS Health. If a Colleague wishes, that Colleague can opt out of this Agreement for a limited time and, by doing so, not be bound by its terms. To opt out, a Colleague must mail a written, signed and dated letter stating clearly that they wish to opt out of this Agreement to: CVS Health, P.O. Box 969, Woonsocket, RI 02895. The Colleague's opt out notice must include their employee identification number, the colleague's return address, and be signed, mailed, and postmarked no later than 30 days after the date the Colleague signs this Agreement, or views the Agreement during the new hire onboarding process, and it must be received by CVS Health.

Agreement ¶ 2.

By signing the Agreement on December 10, 2023, Rivas acknowledged the following

"Statement of Assent and Understanding":

> By signing below, I acknowledge that I have carefully read this Agreement, that I understand its terms, that I have had the chance to ask questions about the Agreement, and that I have had or will have the chance to consult with my own legal counsel before the end of the opt out period described above in Paragraph 2 of this Agreement.. I acknowledge that I am signing this Agreement voluntarily and not in reliance on any promises or representations made by CVS Health other than those in the Agreement itself. . . . **I understand that by signing this Agreement, if I do not opt out in the manner set forth in Paragraph 2 of this Agreement, both CVS Health and I are giving up the right to go to court to resolve Covered Claims** . . . and giving up the right to bring or participate in a class, collective or representative action brought on behalf of or regarding others on Covered Claims. **I further acknowledge that by continuing my employment after being presented with this Agreement, regardless of whether I sign this Agreement, I will be bound by this Agreement unless I opt out in the manner described above.**

Agreement at 6 (emphasis added); Marcel Decl. ¶ 10.  Rivas did not opt out of the

Agreement.  *See* Declaration of Emily McFaul [Dkt. No. 10-14] ¶ 6.

Because Rivas failed to exercise her option to opt out of the arbitration agreement, she

became bound by the Agreement.  *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072,

1074 (9th Cir. 2014) ("By not opting out within the 30–day [opt-out] period, [the employee]

became bound by the terms of the arbitration agreement."); s*ee also Castro v. Macy's, Inc.*, C16-

5991 CRB, 2017 WL 344978, at *4 (N.D. Cal. Jan. 24, 2017) (finding plaintiff's failure to opt out

as implicit agreement); *Aquino v. Toyota Motor Sales USA, Inc.*, 15-CV-05281-JST, 2016 WL

3055897, at *4 (N.D. Cal. May 31, 2016) (same).  Multiple courts have agreed that failure to exercise CVS's 30 day opt-out provision binds employees to CVS's arbitration agreement.[2]

## II.     THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

To successfully raise unconscionability as a defense to contract enforcement, California law requires Rivas to bear the burden of proving both procedural and substantive unconscionability.  *Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1243 (2016); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 911 (2015).  Procedural unconscionability focuses on "oppression" or "unfair surprise," while substantive unconscionability focuses on overly harsh, one-sided terms.  *Sanchez*, 61 Cal.4th at 910.  The two elements need not be present in the same degree: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to [find the term] unenforceable, and vice versa."  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th. 83, 114 (2000).

Rivas argues that the Agreement is procedurally unconscionable because: (1) she was rushed and deprived of a meaningful onboarding process; (2) she did not understand or receive a reasonable opportunity to opt out of the Agreement; and (3) she was not given a copy of the Arbitration Agreement or AAA Arbitration Rules.  Oppo. at 5, 6, 8.

CVS responds that Rivas has not shown that she was impermissibly "rushed" through the onboarding process.  Reply at 4.  CVS notes that Rivas solely relies on the timestamps from the Portal showing she agreed to each of the documents within a matter of minutes and points out that she does not address when she was given access to the Portal or what she was told by a CVS employee that rushed her through her review and agreement to the documents.  Oppo. at 5; Reply at 4.  CVS also points out that the timestamps show only when documents were signed/agreed to, but does not show when the documents were opened for review.  Oppo. at 6; Reply at 4; Marcel Decl. ¶ 8.[3]

---

[2] *See, e.g.*, *Mohammed Shams v. CVS Health Corp.*, 2019 WL 1959576 (C.D. Cal. May 2, 2019) (finding that by failing to invoke opt out option, employee became bound to arbitration agreement); *Cabrera v. CVS Rx Srvs., Inc.*, 2018 WL 1367323 (N.D. Cal. Mar. 16, 2018) (same).

[3] Rivas cites *OTO, L.L.C. v. Kho*, 8 Cal.5th 111 (2019) and *Ali v. Daylight Transport, LLC*, 59 Cal.App.5th 462 (2020) in support of her argument that the pressure from CVS to quickly sign the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Even assuming that Rivas has adequately shown she was rushed – and she has not – that

2    slight degree of procedural unconscionability is extinguished by the opt out process offered by

3    CVS.  *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (finding

4    arbitration agreement not procedurally unconscionable when plaintiff could opt out within 30 days

5    by mail-in form); *see also Johnmohammadi*, 755 F.3d at 1077 (plaintiff's ability to opt out made

6    arbitration agreement voluntary); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir.

7    2002) (same).  Fundamentally, even if some elements of procedural unconscionability are present

8    because Rivas was "rushed" or did not have a "typical" onboarding process, she was able to opt

9    out of the Agreement.  She did not exercise that option.

10    Rivas argues that "even assuming [she] somehow read and understood the opt-out

11    instructions at the time of onboarding, the process required her to remember complex and specific

12    details" and that because she "was never given a copy [of the Agreement or the AAA Rules], nor

13    is there evidence that she was given a copy or could print the onboarding documents, it is clear

14    that there was almost no way for her to opt out[.]"  Oppo. at 8.  CVS has shown, however, that

15    employees are able to access all onboarding documents through the WorkDay Portal at any time,

16    including the Agreement.  The Agreement itself disclosed that AAA Rules were available online

17    or by phone.  Marcel Decl. ¶ 12; Agreement ¶ 7 ("The AAA Rules can be found at the AAA

18    website (www.adr.org), or by calling the AAA's general contact number at 800-778-7879.").  That

19    is sufficient to defeat procedural unconscionability.  *See Wiseley v. Amazon.com, Inc.*, 709 F.

20    App'x 862, 864 (9th Cir. 2017) (holding incorporation by reference of AAA rules is not

21    unconscionable); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 868 (N.D. Cal.

---

23    Agreement makes it procedurally unconscionable.  Oppo. at 7.  But Rivas's declaration is
24    conclusory, asserting only that she was rushed.  Neither side addresses when Rivas was given
      access to the Portal or how long the documents were open for Rivas's review.  More
25    fundamentally, Rivas had full access to the documents after signing them and a clear opportunity
      to opt out.  Any procedural unconscionability from being rushed is nullified by her subsequent
26    opportunity to opt out. Rivas also relies on *Hasty v. American Automobile Assn.*, 98 Cal.App.5th
      1041 (2023) to support her procedural unconscionability argument.  Oppo. at 7.  In *Hasty*, the
27    arbitration agreement was a mandatory condition of employment that the plaintiff may not have
      had to open before proceeding with employment.  *Hasty*, 98 Cal.App.5th at 1046-47, 1050.  Here,
      however, consent to arbitration was not a condition of employment, Rivas had to open the
28    document before consenting to is, and Rivas could opt out.  Agreement ¶ 1 ("Arbitration is not a
      mandatory condition of employment at CVS Health."); ¶ 2 ("Opting-Out") (emphasis in original).

2024) (failure to attach the AAA rules is not, in and of itself, procedurally unconscionable). Rivas has failed to prove any substantial procedural unconscionability, even if she was truly "rushed" through the onboarding process.

As for substantive unconscionability, Rivas argues that the opt out process is itself substantively unconscionable. Oppo. at 8. She relies on the fact that after an employee mails an opt out letter, the employee is forced to wait 45 days for CVS to mail back an "acknowledgement letter," and if no letter comes, the employee must then email LELawTeam@CVSHealth.com within 60 days of originally mailing her opt-out letter. *Id.* That process, according to Rivas, puts an "unfair burden" on an employee and shows that CVS "deliberately makes the opt-out process onerous" by requiring physical mailing of letters and monitoring by the employee, while CVS "retain[s] all the benefits of default arbitration." *Id.* at 8-9. She submits that the provided opt out process is confusing, burdensome, and that the "antiquated process [requiring the mailing of a letter] was hidden and presented without explanation or alternatives." Oppo. at 6, 7.

That said, the opt out provisions are clearly identified at the very beginning of the Agreement and referenced again in the Statement of Assent and Understanding. Agreement ¶ 2 & pg. 6. The Agreement is not confusing or burdensome. It states the basic steps necessary to opt out and provides the opportunity to ask questions and consult with legal counsel before the end of the opt out period. Rivas has not shown that the presentation of or requirements of the opt out provision are substantively unconscionable.

## CONCLUSION

CVS's motion to compel arbitration is GRANTED and proceedings in this case are STAYED. The Clerk shall administratively close the file. The administrative closing shall not be considered a dismissal or disposition of this action against any party. If further proceedings become necessary, any party may initiate them in the same manner as if this case had not been administratively closed.

**IT IS SO ORDERED.**

Dated: July 23, 2025



William H. Orrick
United States District Judge